No. 35,692

In the Matter of the Condemnation of Land for State Highway Purposes. (EDNA CASE and F. L. CASE, *Appellees*, v. STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant.*)

(131 P. 2d 696)

Opinion filed December 12, 1942.

*Tom Stratton,* of Osage City, argued the cause, and *Marc Boss,* assistant attorney general, *Charles Stough,* of Lawrence, and *Roy J. McMullen,* of Great Bend, were on the briefs for the appellant.

*Herbert Diets,* of Great Bend, argued the cause, and *Wayne Lamoreux,* of Great Bend, was on the briefs for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment in condemnation proceedings for a public highway.

Edna Case and husband owned a 188-acre farm adjacent to the city of Heizer in Barton county, on which they resided. A railway right of way ran diagonally through the farm in a northwesterly direction and separated twenty-two acres from the rest of it. The farm residence and other improvements lay south of the railway. A township road ran north and south immediately east of the farm buildings. The land condemned for highway purposes lay immediately south of the railway right of way and ran through plaintiffs' farm close to their house, took the ground on which grew the shade trees which sheltered the house on its north side, and also took the land on which the chicken house, a corral, and one of the farm wells

and windmills were located. The right of way condemned for the new highway ran so close to plaintiffs' barn that one of the surveyor's stakes was set under its north eave and within a foot of its foundation. The north driveway out of the farm yard was cut off, leaving insufficient room between the farm house and the new roadway to take a combine harvester in or out; and to make a new way of ingress and egress to the farm yard will necessitate the cutting down of forty or fifty trees growing on the south side of the house, which is only forty feet from the adjacent land of a neighbor. The land taken was some of the most fertile soil on the farm, with a resulting unbalance between the crop land and the pasture land.

All parties appealed to the district court from the award of the condemnation commissions. The parties did agree that plaintiffs' damages to their fencing should be fixed at $221.60. They also agreed that the land condemned for the right of way of the new highway extended to 13.48 acres, and the additional acreage taken as an easement for a borrow pit was 6.63 acres. A preponderance of the evidence was that the land taken for the borrow pit would render that acreage permanently worthless. Many witnesses testified on both direct and cross-examination as to the value of the land taken and the damages to the land not taken. At the request of the defendant highway commission the jury was taken to the farm for a view of the *locus in quo* and of the apparent effect of the condemnation proceedings upon the plaintiffs' property.

The jury returned a general verdict for plaintiffs in the sum of $3,076.22, and in their answers to special questions they found that the reasonable value of the acreage taken for highway purposes was $1,179.50; the value of the land taken as an easement for a borrow pit was $580.12; the value of plaintiffs' remaining land before the taking was $12,775 and the same remaining land after the taking was $11,680.

Judgment was entered on the general verdict and the state highway commission brings the case here for review, assigning various errors which will be noted in order.

It is first contended that the trial court permitted plaintiffs' witnesses to include speculative and remote elements of damage in their opinion testimony as to the value of the remaining land before and after the condemnation proceedings. Whatever evidence of that sort may have been given appears to have been elicited by defendant in cross-examination, and no monetary estimates were testified to

with respect to such remote and speculative elements of damage. Furthermore, the trial court's instructions were clear and specific—that the jury should not consider remote and speculative damages, and that damages which were uncertain and merely possible, including accidents, action of the elements and the like, were not to be considered in fixing the amount of the award. One such instruction read:

"No. 12. There has been some testimony as to the hazard in crossing the highway and the necessity of planking the highway and putting rubber tires on farm implements. You are to disregard all such testimony as the same is not a proper element of damage in this case."

We think that no prejudicial error appears under this assignment. (See *Griffith v. Railway Co.*, 102 Kan. 23, syl. ¶¶ 2, 3, 169 Pac. 546.)

It is next contended that error was committed in permitting evidence to be introduced touching the value of the shade trees north of the house, apart from the value of the land on which the trees were growing, which land was taken for highway purposes. Appellant invokes the rule stated in *Saathoff v. State Highway Comm.*, 146 Kan. 465, 72 P. 2d 74, that in condemnation proceedings growing bushes and fruit trees being a part of the land should not be valued separately from the land itself. That rule is sound and we have no wish to weaken it. In the instant case the land taken with the shade trees thereon was valued regularly. But it was shown that it was a very substantial damage to the plaintiff's farmhouse by depriving it of its shade trees. We think it would be difficult to find a more apt illustration to justify the familiar rule of law in condemnation proceedings than the one presented here—that of allowing compensation for the land taken and damages to the land not taken—that is, to the farmhouse and its immediate grounds which were so injuriously affected by being deprived of its shade trees. There is no shadow of error under this assignment.

It is next contended that witnesses were permitted "to include double damages" in determining the difference in value of the land remaining before and after the condemnation proceedings. This contention is gratuitous and not sustained by the record. Certainly the plaintiff and other witnesses did testify that the remaining land was less valuable than it was before the taking, which is just the sort of evidence upon which damages to the land not taken can be awarded under our law. Appellant cites *Minneapolis-St. Paul S. District v. Fitzpatrick*, 201 Minn. 442, 277 N. W. 394, 124 A. L. R.

897, where it was held that in condemnation proceedings in Minnesota, the owner is only entitled to compensation for his land taken but "is not entitled to compensation for any element resulting subsequent to or because of the taking." It hardly needs to be said that such is not the rule in this state. In *Smith v. Wyandotte County,* 113 Kan. 244, 214 Pac. 104, this court, speaking by its late chief justice, ruled:

"Where a strip of land is taken from an entire tract for the widening and improving of a highway, the owner is entitled to compensation to the extent of the value of the land taken and for injury to and depreciation of the remainder of the tract resulting from the appropriation; and in determining the damages to which he is entitled, consideration may be given to the character of the improvement and its effect upon the part of the tract not taken, including interference with access to the tract and the use to which it is devoted or reasonably adapted." (Syl.)

That the decision just quoted is only one of a multitude to the same general tenor, see exhaustive digest of our decisions relating to eminent domain and condemnation procedure and practice in *Kansas Judicial Council Bulletin,* July, 1933, pp. 36-80. See, also, annotation to *Grand Rapids v. Barth,* 248 Mich. 13, 226 N. W. 690, in 64 A. L. R. 1513 *et seq.,* and 10 R. C. L. 153-157.

Another error urged is that the trial court abused its discretion because of its repeated rulings that testimony which appellant sought to elicit by cross-examination of plaintiffs' witnesses and by direct examination of its own witness, a highway engineer, that the highway commission had no plans to construct a ditch on the south side of the new highway which would render it impracticable to make a convenient way of ingress and egress for plaintiffs' farm machinery. The court ruled such testimony immaterial on the ground that the highway commission would not be bound to adhere to its present engineering plans, and that in the future it could construct a roadside ditch thereabout at any time. We see nothing here that savors of abuse of judicial discretion. Moreover, the excluded evidence of what the highway engineer would have testified to was not produced in support of the motion for a new trial. Consequently no reviewable error is presented under this assignment. (*Hall v. Shaffer,* 131 Kan. 109, 289 Pac. 442; *Hunter v. Greer,* 137 Kan. 772, 22 P. 2d 489.)

It is finally urged that the trial court erred in permitting the amounts allowed in the appraisement award to be introduced in evidence. This is a mere talking point. Seeber, who had been one

of the appraisers, was called as a witness by defendant and he testified that the land taken was worth $70 per acre. On cross-examination he admitted that in appraising the land he had valued it at $85 per acre. The court said:

"Well, these questions, gentlemen of the jury, which counsel propounds, are not evidence, and you will disregard them where the court sustains an objection."

The trial court further covered this point specifically in its instructions to the jury thus:

"Certain testimony has been introduced in evidence in cross-examination of the witness F. C. Seeber relating to values said F. C. Seeber placed on the real estate involved in this action as a commissioner for this court. You are instructed that this evidence was permitted by the court to go to you for one purpose only, to wit: As affecting, if it does, the credibility of the witness F. C. Seeber, and you can consider said testimony for no other purpose. The report of the commissioners is no evidence whatever as to the value of the real estate either before or after the condemnation proceedings."

Safeguarded and limited as this shows, it is clear that the evidence complained of under this assignment was not incompetent.

The judgment is affirmed.